[No. 559. Decided October 3, 1892.]

THE CITY OF TACOMA, *Respondent*, v. H. M. LILLIS, *Appellant.*

CITY COUNCIL—COMPENSATION OF MEMBERS—EXTRA PAY—RECOVERY BY
CITY—VOLUNTARY PAYMENT.

Where a city is authorized by its charter "to establish and regulate the fees and compensation of all its officers," but has made no provision by ordinance for salary or compensation for councilmen, it cannot, after having ordered by resolution that a councilman be paid for his official services, recover back the amount paid, on the ground that it failed to pass an ordinance authorizing the payment.

Where there is an ordinance of the city in force establishing the salary of councilmen, the council cannot, by resolution, vote themselves additional compensation for services rendered in their official capacity.

The principle of law that money voluntarily paid, with full knowledge of the facts, and without fraud or duress, cannot be recovered, has no application to cases where the person wrongfully receiving payment is a member of the council or board which orders such payment.

A councilman, while acting as such, can perform no extra services for the city; by accepting the office he undertakes to discharge all of its duties, whatever they may be, whether they are increased or diminished during his term.

Although the contract between a city council and a member thereof for services, outside of the scope of his official duties, is unauthorized by law and contrary to public policy, yet, where it is fully executed by both parties, and is beneficial to the city, the city cannot retain the benefit and recover the consideration paid therefor.

*Appeal from Superior Court, Pierce County.*

*Crowley & Sullivan,* and *Judson & Sharpstein,* for appellant.

*S. C. Milligan,* and *F. H. Murray,* for respondent.

The opinion of the court was delivered by

ANDERS, C. J.—From the year 1887 to May 12, 1890, appellant was a member of the city council of the city of Tacoma. At the time of his election, in 1887, and for two years thereafter, no fees or salary were attached to the office of councilman, either by statute or ordinance; but under the power given to the council by the charter of the city "to establish and regulate the fees and compensation of all its officers, excepting when otherwise provided" (Laws 1885–6, p. 203), an ordinance was passed on April 7, and approved April 10, 1888, wherein and whereby it was provided that each of the councilmen of the city should receive a salary of two hundred dollars per annum, payable quarterly, and that said salary should begin on the second Saturday of May, 1889. Prior to the going into effect of this ordinance, appellant presented to the city council of said city bills for services performed during the year 1887–8 and the year 1888–9, amounting in the aggregate to $344. On January 12, 1890, a claim for one hundred dollars was presented for services, and on April 12, 1890, a further bill was presented to the council for $750 for services rendered from May 1, 1889, to March 1, 1890. All of these claims were allowed by the city council, and audited and ordered paid. Warrants were subsequently issued there-

for, which were paid by the city treasurer out of the general fund of said city. The aggregate amount of these sums was $1,194. Appellant was also paid, in addition to the above amount, the salary of two hundred dollars per annum after the ordinance above mentioned went into operation. The city, having elected a new council, brought this action to recover from the appellant the said sum of $1,194 so paid to him, basing its right of recovery upon the alleged ground that appellant demanded and received the same without being entitled thereto, and without any authority of law therefor. A general demurrer to the complaint having been overruled, an answer and a reply were filed, and by consent of the parties the cause was tried by the court without a jury.

Counsel for both parties to this controversy agree that the city government of the city of Tacoma was authorized by the city charter to fix the compensation of its own members. The case was tried upon that theory, both in this court and in the court below, and that question is, therefore, not before us for consideration. It is claimed, however, by counsel for the respondent, that payment of the salary of a councilman could only be authorized by law, contract, or ordinance; that there was no contract between appellant and the city in this instance, and, consequently, that the several payments made to appellant for services as a member of the council were received without authority of law and should be refunded. On the other hand, it is contended by the appellant that the city, having the undisputed power and having paid for the services rendered, is bound by the action of the council, in the absence of fraud or collusion, and that no recovery can be had against him for the money thus received. These contentions raise the first question to be considered. It cannot be doubted that the city council possessed only such powers as were specially conferred upon it by the charter, together with such other

powers as were necessary to carry into effect those thus granted. A city charter is its constitution, and its council can legally do no act not within the limits prescribed thereby. The inhabitants of the city are the incorporators, and the council are its trustees and agents, clothed only with such power to represent and act for the corporation as the charter gives them. If they transcend the authority conferred by the charter, their acts are not binding upon the city. It was the duty of the council to disburse the funds of the city for purposes authorized by law only, and if they appropriated money to themselves which they had no right to receive, we think the city may recover it back as money had and received for its use.

The question is, then, did the council, in any event, have the right to pay to appellant any part of the money which the city now seeks to recover? Respondent admits that appellant performed services as one of its councilmen, and also admits and alleges in its complaint, in substance, that the city, through its council, was authorized by its charter to fix and regulate his compensation, but insists, in effect, that because the city paid what it was authorized to pay, but did it without the sanction of an ordinance, it should now be allowed to recover it back regardless of whether it was paid in good or bad faith. We think the position of respondent is not tenable in so far as the $344.00 is concerned. If the city had legal authority to compensate appellant for his official services during the time preceding the going into effect of the ordinance establishing the salary of councilmen, it cannot, after having done so in pursuance of a vote or resolution, turn around and recover back the amount paid on the sole ground that it failed to pass an ordinance authorizing the payment. If it was within the province of the council, as admitted by the respondent, to fix the compensation of its members, a mere irregular exercise of the authority vested in it would not

render such action, in the absence of fraud or collusion, absolutely void, and of no binding effect upon the city. *Ward v. Town of Forest Grove*, 20 Or. 355 (25 Pac. Rep. 1020); *Tyler v. Trustees, etc.*, 14 Or. 485 (13 Pac Rep. 329). We are, therefore, of the opinion that the one hundred and forty-four dollar and the two hundred dollar items cannot be recovered by the respondent, even if paid, as claimed by respondent, for services falling strictly within the scope of appellant's duties as councilman. Nor do we think the authorities cited by counsel for respondent militate against this conclusion. See 1 Dill. Mun. Corp. (4th ed.), § 230; *Sikes v. Hatfield*, 13 Gray, 347; *Farnsworth. v. Melrose*, 122 Mass. 268; *Albright v. County of Bedford*, 106 Pa. St. 582; *Garvie v. Hartford*, 54 Conn. 440 (7 Atl. Rep. 723).

In the section above cited from Judge Dillon's valuable work, and which is sustained by the authorities cited, that learned author says:

"There is no such implied obligation on the part of municipal corporations, and no such relation between them and officers which they are required by law to elect as will oblige them to make compensation to such officers, unless the right to it is expressly given by law, ordinance, or by contract. Officers of a municipal corporation are deemed to have accepted their office with knowledge of and with reference to the provisions of the charter or incorporating statute relating to the services which they may be called upon to render, and the compensation provided therefor. Aside from these, or some proper by-law, there is no *implied assumpsit* on the part of a corporation with respect to the services of its officers. In the absence of express contract, these determine and regulate the right of recovery and the amount."

It is undoubtedly true that there is no such implied obligation on the part of municipal corporations as will *oblige* them to make compensation to their officers, unless the right to it is expressly given by law, ordinance or contract;

but it by no means follows that if such a corporation has a right to pay its officers a salary, and does pay them without violating any law, it can or ought to recover back the money simply for the reason that it was not *obliged* to make the payment in the first instance; and no authority has been cited by respondent to sustain such a proposition. The cases cited by respondent are either to the effect that a public officer cannot recover compensation not allowed by law, or that an illegal payment may be enjoined.

The remaining portion of the sum sought to be recovered, viz., $850, was paid to appellant at different times after the ordinance of April 10, 1888, went into operation; and it now becomes necessary to determine the effect of that ordinance upon the power of the council to compensate its members.

It may be stated as a general legal proposition that valid ordinances have the force of laws, and are as binding upon the inhabitants of a municipality as are the statutes of the state upon its citizens generally.  1 Dill. Mun. Corp. (4th ed.), § 308; *Milne v. Davidson*, 5 Mart. (N. S.) 409.

When the city council passed that ordinance they established the law upon the subject of salary of councilmen, and they were as firmly bound by its provisions as if it had been a law passed by the legislature of the territory. And this being so, they had thereafter no right or authority to pay themselves any other or greater sum for services rendered in their official capacity than that specified in the ordinance, so long as it remained in force.  But it is argued by the learned counsel for appellant that the city council were not prohibited, either by law or by the organic act of the territory, from changing an officer's salary or fees at any time they saw proper to do so, either by ordinance or resolution, and that they did so in this case.  Undoubtedly the law-making body of the corporation had, prior to the taking effect of the state constitution, the right and

power to increase or diminish the salary of appellant. The right to pass ordinances implies the right to repeal them; but in this instance we nowhere find in the record that the council ever attempted to change or appeal the ordinance fixing the salary of its members. It can hardly be said that the allowing and paying of claims for services alleged to have been rendered effected a repeal or even a modification of the ordinance, which, as we have already intimated, was the measure of the city's liability to appellant, as well as of his right to compensation. It has been held by some authorities, and we have observed none to the contrary, that a municipal ordinance cannot be repealed by mere resolution. To accomplish that result a new ordinance must be passed. Horr & B. Mun. Pol. Ord. § 61; *Jon:s v. McAlpine*, 64 Ala. 511.

The effect upon this case would be the same, however, if we should hold that the resolutions authorizing the extra payments, which were made after the ordinance, went into effect, changed, modified or repealed that ordinance, for the resolutions were passed not only after the passage of the ordinance, but after the constitution of the state became operative. After that date (November 11, 1889), the city no longer had the power, in any manner, to change the salary of appellant during his term of office, whatever may have been its power previous to that time. It is provided, in § 8, art 11, of that instrument, that "the salary of any county, city, town or municipal officer, shall not be increased or diminished after his election, or during his term of office." This is an express limitation upon the power of the council, and no increase of appellant's salary thereafter would have been legal, even if authorized by ordinance.

And the principle of law that money voluntarily paid, with full knowledge of the facts, and without fraud or duress, which is invoked by appellant, seems to us to be

inapplicable to this case.   Appellant was the agent of the city and was entrusted with the care and management of its funds, and if he appropriated any of such funds to his own use, contrary to law, he is liable therefor as such agent, although he may have done it under a claim of right, and with no dishonest motive.   Another reason why the doctrine contended for by counsel ought not to be held applicable to cases like the one now under consideration is, that it would enable a municipal council to violate with impunity a plain provision of the constitution.   This question was before the court in *Weeks v. Texarkana*, 50 Ark. 81 (6 S. W. Rep. 504).   The case was this: Weeks was city recorder, and his salary had been reduced.   He claimed to be entitled to the salary as originally fixed, and sued the city to recover it.   The city claimed a set-off on account of over payment after the ordinance reducing his salary took effect.   The trial court held that the money, having been voluntarily paid, could not be recovered back.   The supreme court ruled otherwise, using this language:

"But the court below seems to have considered that the town, having voluntarily paid Weeks this salary under no misapprehension of the facts, could not recover it back. However true this may be as a general proposition, it ought not to be extended to cases where the officer so wrongfully receiving payment was a member of the council or board which ordered such payment.   This would enable every municipal body to evade the salutary restraints imposed by the statute.   They might vote themselves extravagant salaries after their induction into office, and when they had once received the money might set the municipality at defiance."

See also *Petersburg v. Mappin*, 14 Ill. 193; *East Nissouri v. Horseman*, 16 U. C. Q. B. 582; *Daniels v. Burford*, 10 U. C. Q. B. 478.

We have not overlooked the objection made by appellant that the testimony on the part of plaintiff fails to prove

that the moneys received by him were received as compensation for services which he was bound to perform by virtue of his office, and that the judgment of the court below was therefore wrong, even on plaintiff's own showing; but we think the objection should not be sustained. The bill for $750, presented by appellant, and which was ordered paid, and which it is admitted was paid, purports upon its face to be for services as councilman from the 1st of May, 1889, to 1st of March, 1890. This was at least *prima facie* proof of the character of the claim, and we do not think it was destroyed or neutralized by the record of the proceedings of the council which was introduced in evidence by the plaintiff, and which is as follows:

"The several committees have reported in favor of allowing bills for seventy-five dollars per month each, for extra services of the mayor, Councilmen Fuller, Horsfall, Lillis, Houghton, Dougan and Uhlman. The same were ordered paid by unanimous vote."

A councilman, while acting as such, can perform no extra services for the city. By accepting the office he undertakes to discharge all of its duties, whatever they may be, and whether they are increased or diminished during his term. *Evans v. Trenton,* 24 N. J. Law, 766; 1 Dill. Mun. Corp. (4th ed.), § 233.

But it may be true, as claimed by appellant, that the $850.00 which he received in 1890, was paid to him for services which were no part of his official duties. If so, he ought not to be compelled to refund it even though the contract under which the services were rendered was in contravention of § 165 of the charter. If appellant performed labor for the city which was beneficial, and which was outside of the scope of his official duties, and might have been done by any other person, and for which he has been paid, it cannot now retain the benefit and recover back the consideration paid. Such a proceeding would be highly

inequitable, and could not be tolerated for a moment in a court of justice. See *Macon v. Huff*, 60 Ga. 221; *Thomas v. Railroad Co.*, 101 U. S. 71. Although we agree with counsel for respondent that the contract between the city council and appellant in relation to the services for which the latter claims to have been paid was unauthorized by law and contrary to public policy, yet, inasmuch as it was fully executed by both parties, the city, in the absence of any allegation of corporation or fraud in the transaction, cannot now be permitted to take unjust advantage of appellant on the ground that the contract was originally invalid. *Argenti v. San Francisco*, 16 Cal. 256.

Appellant alleges, in substance, in his answer as an affirmative defense and offered to prove at the trial in the superior court, that the services for which the extra compensation was paid were not such as were required of him in the performance of his duties as councilman; that said services were authorized by the city, and that the city received the benefit thereof. The charter does not undertake to prescribe, in detail, the duties of councilmen, and it would be difficult, if it were necessary, for the court to enumerate them all. But it certainly cannot be true, in all cases, that a councilman discharges all of his official duties by attending the meetings of the council, and taking part in its deliberations. As in other legislative bodies, much of the work is performed by committees, and when a member is serving on a committee of the council he is only discharging the ordinary duties of his office, and is not entitled to extra compensation therefor. Nor is the amount of time or labor required to properly discharge the duties of a public office material. If necessary, the public is entitled to his whole time. He cannot be compelled to retain his office longer than he desires, and if the salary is inadequate or the duties of the office require more time than he can afford to devote to them, he is at liberty to

resign.   Neither is it material that the amount claimed as extra compensation is a reasonable one for the services performed.   When the compensation is fixed by law nothing more can be claimed whether the amount so established is reasonable or unreasonable.   While we do not think that appellant was entitled to any compensation beyond his regular salary for "examining machinery, hose and equipments connected with the fire department of the city, or for examining the condition of the streets, and the work done thereon, or for looking after the public property generally," it seems plain to our minds that it was no part of his official duty to act as superintendent of the work of contractors upon the streets, bridges or buildings of the city, or to set up or adjust machinery, and if he could have shown that he did such work at the request of the city, and that it was meritorious, we think he should have been permitted to do so, or that he performed any other services of such a character that they might as appropriately have been performed by a private individual, and for which the latter would have been entitled to compensation.   What he did in the capacity of councilman, he was bound to do for the salary fixed by the ordinance, although the amount so fixed may have been deemed a very inadequate remuneration for the services rendered.   *Evans v. Trenton, supra.*

We think the complaint states a cause of action and that the demurrer was properly overruled.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

DUNBAR, STILES, SCOTT and HOYT, JJ., concur.